NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0592n.06

No. 08-2270

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

RUSSELL POLSON,

     Defendant-Appellant.

_____ /

FILED
Aug 21, 2009
LEONARD GREEN, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

BEFORE:    KEITH, CLAY, and GIBBONS, Circuit Judges.

     **CLAY, Circuit Judge.** Defendant-Appellant Russell Polson ("Polson") appeals his sentence of 120 months of imprisonment, imposed after he pled guilty to one count of possessing fifty grams of crack cocaine with the intent to distribute, in violation of 21 U.S.C. § 841. On appeal, Polson contends that the district court erred in denying his request for a safety valve benefit, or alternatively, failed to provide an adequate explanation for denying the benefit. For the following reasons, we **VACATE** Polson's sentence as procedurally unreasonable and **REMAND** for re-sentencing.

## BACKGROUND

     According to Polson's Presentence Investigation Report ("PSR"), on January 26, 2006, a confidential informant told agents of the Drug Enforcement Agency ("DEA") that Polson possessed a large amount of cocaine and was at the Wax Doctor, a car wash in Grand Rapids, Michigan. The confidential informant described Polson to the DEA agents and advised that Polson was driving a

2000 white Chevrolet Monte Carlo. DEA agents arriving at the car wash spotted the white Monte Carlo, then observed Polson walking from the car wash to the Monte Carlo carrying a brown paper bag. Polson drove away, the DEA agents followed him, and when the agents observed Polson committing a traffic infraction, they initiated a stop. When Polson failed to produce his driver's license, the agents arrested him and searched his car. In Polson's car, the agents found the brown paper bag. The brown paper bag contained two plastic bags, one containing cocaine base and one containing powder cocaine. The brown paper bag also contained a dryer sheet and a digital scale in a box.

The DEA agents transported Polson to the DEA offices in Grand Rapids and read Polson his *Miranda* rights, at which point Polson explained to them his possession of the drugs as follows:

> [Polson] advised the cocaine in his vehicle belonged to him and was the balance of an 18-ounce purchase he had made through Kevin Strickland, whom he identified as a broker. Mr. Polson denied he knew the actual source of the cocaine. He explained he purchased the original 18 ounces on January 13, 2006. Mr. Polson described how he was "fronted" the 9 ounces of powder cocaine and purchased the 9 ounces of cocaine base. He reported he made the entire purchase for $10,500.00, and had since sold two separate [4.5]-ounce quantities of cocaine for $3,100.00 each and one additional 2-ounce sale of cocaine for $1,400.00. Mr. Polson reported he paid his source a total of $5,600.00 and still owed a balance of $4,900.00. . . . Mr. Polson explained how he purchased cocaine on approximately 15 occasions through Mr. Strickland and received 9 to 18 ounces of cocaine per occasion. Mr. Polson added he typically purchased cocaine in rock form as he personally disliked cooking powder into cocaine base. . . . Mr. Polson reported he had approximately [.5] ounce of cocaine base at his residence and said his wife was aware of his drug trafficking.

(PSR at 5.)

On February 8, 2006, Polson was indicted on one count of possessing with intent to distribute fifty grams or more of cocaine base and one count of possession with intent to distribute an unspecified quantity of powder cocaine, both in violation of 21 U.S.C. § 841. On May 23, 2006,

Polson pled guilty to possessing fifty grams of cocaine base with intent to distribute, and the court granted the government's motion to dismiss the powder cocaine possession charge.

Prior to sentencing, while interviewed by the probation officer preparing the PSR, Polson changed his explanation for possessing the drugs:

> [Polson] reported he provided arresting officers and DEA agents a false version of events. He said he was trying to protect the identity of his suppliers, whom he identified during the presentence interview as Larry Henton and Wyndell Smith. He reported Mr. Smith owned the [Wax Doctor car wash]. The defendant stated he had agreed to deliver the cocaine for Messrs. Henton and Smith previously, and the two were supposed to leave the substance in his vehicle. He had agreed to retrieve the vehicle and transport the substance to Martin Luther King Park in Grand Rapids and leave the vehicle parked so the drugs could be retrieved by another unknown individual. . . . Mr. Polson added the DEA agents subsequently searched his residence and located 5 grams of cocaine base. He reported the substance was payment received two days prior from Messrs. Henton and Smith for delivering the substance.

(PSR at 6.)

The PSR placed Polson in Criminal History Category I and calculated a total offense level of 32, for a recommended sentencing range under the United States Sentencing Guidelines (the "Guidelines") of 121 to 151 months of imprisonment. The PSR noted that because Polson had been convicted of several offenses that for various reasons were not included in his criminal history calculation, "the Court may conclude Mr. Polson's criminal history is significantly underrepresented . . . and, therefore, consider an upward departure from the guidelines." (PSR at 21.) The PSR also recommended denying Polson a two- or three-level reduction for acceptance of responsibility, stating that Polson's conflicting explanations of how he came to possess the drugs at issue "provide no clear and convincing sense of what is truthful and what is not." (PSR at 7.)

Pursuant to 21 U.S.C. § 841(b)(1)(A)(iii), Polson was subject to a ten-year mandatory minimum sentence, because he pled guilty to possessing fifty grams of a substance containing cocaine base. The PSR did not recommend Polson for the "safety valve" exception in which, pursuant to 18 U.S.C. § 3553(f) and § 5C1.2 of the Guidelines, the district court had the authority to sentence Polson without regard to the ten-year mandatory minimum. Similarly to its recommended denial of acceptance of responsibility credit, the PSR recommended denying the safety valve because Polson's conflicting statements created confusion as to which of his two statements had been truthful.

In his sentencing memorandum, Polson's counsel objected to the PSR's suggestion that Polson had not accepted responsibility, arguing that regardless of his inconsistent explanations for how he obtained the drugs, Polson had accepted responsibility for the possession, and did not need to provide information beyond the conduct charged to receive the acceptance-of-responsibility reduction. Polson's counsel also argued that Polson qualified for the safety valve exception set forth in 18 U.S.C. § 3553(f) and § 5C1.2 of the Guidelines. The government did not submit a sentencing memorandum in response.

At Polson's sentencing hearing on September 18, 2006, Polson's counsel again argued for acceptance of responsibility, and stated as part of his argument that "[Polson] was nervous at the time of the initial interview. He had not had an opportunity to be able to consult with counsel. Following consultation with myself he was able to provide a detailed version, a detailed version, and we believe that to be truthful, of what took place." (Sentencing Tr. at 7-8.) The government acknowledged that Polson's conflicting statements regarding the source of his drugs did not

disqualify him from credit for acceptance of responsibility, since he admitted the facts relevant to his charged conduct. The court granted the requested three-level reduction for acceptance of responsibility, reducing Polson's total offense level to 29 and his Guidelines range to 87 to 108 months. In granting the reduction, the court's only explanation for doing so was, "Well, I'm going to grant you the acceptance of responsibility. . . . I think it's a very close call." (Sentencing Tr. at 9.)

The district court then noted the PSR's suggestion that an upward departure would compensate for Polson's previous offenses that were not factored into his criminal history category. The court listed some of those past offenses, then stated: "And so [the probation officer's] concern is does a criminal history category one really accurately represent this or should there be an upward departure from the guidelines and I'll turn to the government about that first." (Sentencing Tr. at 12.) When the government addressed the criminal history issue, it referred to the safety valve exception, and the district court, rather than hearing from Polson's counsel regarding Polson's criminal history, immediately stated:

> I think it's good to raise the safety valve issue at this point[.] . . . Safety valve has a bunch of categories and the fifth category, I think, is a real problem in applying your case. The fifth category is that not later than the time of the sentencing hearing you truthfully provided to the government all information in evidence that you have concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. It's not about whether you have relevant or useful other information to provide; it's whether you've been truthful and forthright. In my judgment reading everything in this case you're not entitled to the safety valve. This is where it hits you. So we'll go forward without the safety valve. So although we give you the benefit of the acceptance of responsibility at this point in the proceedings you won't get a reduction in your offense level off the safety valve.

(Sentencing Tr. at 12-13.) The court then sentenced Polson to the mandatory minimum of 120 months of imprisonment, followed by five months of supervised release.

Following its announcement of Polson's sentence, the district court asked Polson's counsel whether there was "[a]nything more for the defendant?" (Sentencing Tr. at 24.) Polson's counsel indicated he had nothing further to say, and the hearing concluded. In the court's judgment filed the same day as the sentencing hearing, under the section titled "Court Findings on Presentence Investigation Report," the court marked the box next to the sentence, "The court adopts the presentence investigation report without change." (Judgment at 7.)

On July 23, 2007, Polson filed a pro se motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255, alleging that he received ineffective assistance of counsel because his counsel had not filed an appeal of the court's sentence, as Polson claimed he requested. Following an evidentiary hearing, the district court granted the motion and re-sentenced Polson to the same sentence he had previously been given, to afford Polson the chance to appeal.[1] At Polson's re-sentencing, the district court made clear that he would only reinstate the judgment that the court had previously imposed, and therefore, Polson's re-sentencing hearing did not revisit any of the previous issues or arguments related to Polson's original sentence. On September 8, 2008, Polson timely appealed his re-imposed sentence.

**DISCUSSION**

---

[1]This procedure was consistent with this Court's prior instructions to district courts that found a defendant's counsel failed to file a notice of appeal as the defendant requested. *See Rosinski v. United States*, 459 F.2d 59, 59 (6th Cir. 1972); *Johnson v. United States*, 146 F. App'x 4, 5 (6th Cir. 2005).

In his appeal, Polson challenges his sentence on two related grounds: first, that the district court denied Polson the benefit of the safety valve provision based on improper factfinding; and second, that the district court committed procedural error by failing to provide adequate reasoning for its denial of the safety-valve exception.

## I.      Standard of Review

In reviewing a sentence imposed by a district court, this Court reviews the ultimate sentence imposed for reasonableness, under "a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 591 (2007). However, this Court reviews the factual findings the district court made in reaching its sentence under the clearly erroneous standard, and reviews its conclusions of law *de novo*. *United States v. Tate*, 516 F.3d 459, 464 (6th Cir. 2008).

A district court's sentence is procedurally unreasonable if the court commits "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range." *Gall,* 128 S.Ct. at 597. Polson's two challenges to the district court's denial of the safety valve–that the denial was based on improperly found facts and that the court's explanation for the denial was inadequate–are both concerned with the procedural reasonableness of his sentence. *See id.*

Generally, a defendant must object to any procedural errors made by the sentencing judge immediately after the district court has announced its sentence, or any procedural reasonableness challenge is subject to plain-error review on appeal. *United States v. Vonner*, 516 F.3d 382, 385-86

(6th Cir. 2008) (en banc). However, the plain-error standard applies only where the district court gave the appellant "a meaningful opportunity" to object. *Id.* at 385. A district court provides this meaningful opportunity to object "only by clearly asking for objections to the sentence that have not been previously raised.'" *United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007) (quotations and citation omitted). Where the district court fails to ask that specific question, a defendant's "failure to raise any of his arguments as objections below does not trigger plain-error review." *United States v. Gapinski*, 561 F.3d 467, 473-74 (2009). After sentencing Polson, the district court asked Polson's counsel only whether there was "[a]nything more for the defendant?" (Sentencing Tr. at 24.) This question was not specific enough for the negative response from Polson's counsel to trigger plain-error review. *See Gapinski*, 561 F.3d at 473 (concluding plain-error review did not apply where district court asked appellant's counsel, "Anything else for the record[?]"); *Thomas*, 498 F.3d at 340 (no plain-error review where district court asked, "Do you have anything further for the record[?]"). Accordingly, we will review the procedural reasonableness of the district court's sentence under the usual abuse-of-discretion standard.[2] *See Gall,* 128 S. Ct. at 591.

## II.     Denial of Safety Valve

"As the safety valve determination is based on factual findings, this Court reviews only for clear error a district court's decision not to grant a safety valve reduction." *United States v. Haynes*,

---

[2]Arguably, even if the district court had properly asked Polson if he had any objections, plain-error review would have been appropriate only for Polson's challenge to the adequacy of the court's explanation for denying the safety valve, and not for Polson's challenge to the denial itself. *See Vonner*, 516 F.3d at 386 (holding defendant's failure to object to procedural errors after imposition of sentence does not affect defendant's right to appeal procedural issues he previously raised). Because Polson argued for the benefit of the safety valve in his sentencing memorandum, he did not need to object to the district court's rejection of that argument.

468 F.3d 422, 426 (6th Cir. 2006). "A finding of fact will only be clearly erroneous when, although there may be some evidence to support the finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Latouf*, 132 F.3d 320, 331 (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)). "We will uphold the district court's decision as long as it has interpreted the evidence in a manner consistent with the record." *United States v. Darwich*, 337 F.3d 645, 664 (6th Cir. 2003). "This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Anderson*, 470 U.S. at 574. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.*

The safety valve provision mandates that for defendants convicted of violating 21 U.S.C. § 841, a district court "shall impose a sentence . . . without regard to any statutory minimum sentence" if the court finds that

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan[.]

18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a). "A defendant bears the burden of proving by a preponderance of the evidence that he or she is entitled to a safety valve reduction." *Haynes*, 468 F.3d at 427.

Polson argues that because he provided a detailed version of the facts surrounding his offense, the burden should have shifted to the government to provide rebutting evidence. However, a defendant does not automatically meet his burden simply by providing a narrative of the circumstances surrounding his offense; he must also prove that he has provided his information "truthfully." 18 U.S.C. § 3553(f)(5); *see also United States v. O'Dell*, 247 F.3d 655, 675 (6th Cir. 2001) ("[T]he safety valve was intended to benefit only those defendants who truly cooperate.") (quotations and citation omitted).

The district court did not commit clear error in finding that Polson did not provide information truthfully. Although Polson provided the probation officer with a detailed version of the events leading up to his arrest, that version differed dramatically from the version he provided in his initial statement after his arrest. In his initial statement, Polson portrayed himself as a frequent seller of drugs, indicating that he had purchased nine to eighteen ounces of cocaine on approximately fifteen occasions from his supplier, and that he cooked the cocaine into crack on his own before selling it. In his subsequent statement to the probation officer, Polson indicated that he was not a regular seller, but simply agreed to make a one-time delivery. Both of Polson's accounts were submitted by way of the PSR, and neither version was entitled to greater evidentiary weight than the other. Although Polson's counsel argued at the sentencing hearing that Polson's statement to the probation officer was the truth, he did not submit any evidence to support that claim. Because the

record does not indicate that the court committed clear error in finding Polson's statement to his probation officer to be untruthful, we affirm the district court's finding that Polson was not entitled to the benefit of the safety valve provision.

## III.     Adequacy of Explanation

In reviewing the district court's reasoning, this Court must "ensure that the district court has 'adequately explain[ed] the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *United States v. Bolds*, 511 F.3d 568, 580 (6th Cir. 2007) (quoting 18 U.S.C. § 3553(a)). "Reversible procedural error occurs if the sentencing judge fails to 'set forth enough [of a statement of reasons] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority.'" *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 2468 (2007)). "[T]he record must contain the district court's rationale for concluding that the sentence imposed is 'sufficient but not greater than necessary, to comply with the purposes' of sentencing set forth in 18 U.S.C. § 3553(a)." *Id.* "This Court has established that '[w]here a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it.'" *United States v. Recla*, 560 F.3d 539, 547 (6th Cir. 2009) (quoting *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006)).

The district court's denial of the safety valve benefit in Polson's case was procedurally unreasonable because the court did not provide reasoning that was clear enough to afford meaningful review. The PSR recommended that Polson's requests for acceptance of responsibility and the safety valve exception both be denied for the same reason: that Polson's two conflicting statements

11

regarding how he came to possess the drugs at issue undermined his claim to truthfulness. During the sentencing hearing, while arguing that Polson was entitled to credit for acceptance of responsibility, Polson's counsel attempted to explain the reason for the discrepancy in Polson's statements, arguing that Polson had been nervous the day of his arrest and had not had the opportunity to consult with his attorney; the district court responded by granting a three-level reduction for acceptance of responsibility, though it did not give its reason for doing so. Then, without hearing any arguments regarding the safety valve exception, the court denied it because Polson had not been "truthful and forthright." (Sentencing Tr. at 13.) While this short statement might ordinarily be sufficient to satisfy this Court's requirement that district courts give reasons for rejecting parties' arguments, in the specific context of having just granted acceptance of responsibility, the explanation was confusing. *See United States v. Liou*, 491 F.3d 334, 338 (6th Cir. 2007) ("The amount of reasoning required varies according to the context."). The district court found that Polson was not truthful after "*reading* everything in this case," (Sentencing Tr. at 13) (emphasis added), thereby indicating that it based its decision upon the written submissions. Since the government did not submit a sentencing memorandum, the district court appeared to be relying entirely on the PSR to deny the safety valve. However, the PSR recommended denying both acceptance of responsibility and the safety valve exception because of Polson's lack of truthfulness.

It is therefore unclear why the district court granted Polson acceptance of responsibility but denied him the benefit of the safety valve. If the court had explained why it granted acceptance of responsibility credit to Polson in spite of his lack of truthfulness, this Court could be more confident that the district court's findings were consistent. Because the court did not explain its granting of

acceptance of responsibility, and provided only a cursory–and potentially inconsistent– explanation for denying the safety valve, the court did not provide a clear rationale for the sentence imposed and its rejection of Polson's explanation for the inconsistency of his two statements. *See United States v. Moon*, 513 F.3d 527, 539 (6th Cir. 2007) ("The district court's opinion must . . . provide some indication that the court considered the defendant's arguments in favor of a lower sentence and the basis for rejecting such arguments.").

The court compounded this confusion in its statement of reasons included with the judgment, in which it stated that it adopted the PSR without change, even though it seemingly rejected the court's recommendation to deny Polson credit for acceptance of responsibility. In short, the court failed to "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *See Bolds*, 511 F.3d at 580.

Accordingly, the district court's failure to provide an adequate explanation for denying Polson the safety valve benefit was procedurally unreasonable.[3]

**CONCLUSION**

---

[3]Polson also argues that the district court's failure to hold a "meaningful evidentiary hearing" to determine the credibility of his statement to the probation officer further rendered its sentence procedurally unreasonable. Although our finding of procedural unreasonableness renders this argument superfluous, we note that it is without merit. First, district courts are not required to hold a separate evidentiary hearing when a sentencing issue is in dispute. *See* Fed R. Crim P. 32(i)(2) (a district court "*may* permit the parties to introduce evidence on the objections" to the PSR) (emphasis added); *see also United States v. Thomas*, 167 F.3d 299, 305-06 (6th Cir. 1999) (court's refusal to conduct evidentiary hearing regarding disputed issue at sentencing is reviewed for abuse of discretion). Moreover, Polson did not request an evidentiary hearing or seek to introduce independent evidence to support the veracity of the statement he made to the probation officer prior to sentencing. Accordingly, the district court did not abuse its discretion in failing to conduct a separate evidentiary hearing.

For the reasons set forth above, we **VACATE** the district court's sentence and **REMAND** for re-sentencing.

**JULIA SMITH GIBBONS, Circuit Judge, concurring.** I concur in the majority opinion, but I write separately to note my objection to our court's excessively formalistic application of the *Bostic* rule. We held in *Bostic* that, where the district court provides a "meaningful opportunity to object" to a sentence yet either party fails to do so, that party's objection is forfeited and reviewable only for plain error. *See United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004); *see also United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (*en banc*). This sensible rule "serve[s] the dual purpose[s] of permitting the district court to correct on the spot any error it may have made and of guiding appellate review." *See Bostic*, 371 F.3d at 873 (second brackets in original). In subsequent cases, however, the rule has been extended to require the district court not only to provide an opportunity to object, but to do so using the precise words announced in *Bostic*. *See, e.g.*, *United States v. Gapinski*, 561 F.3d 467, 473 (6th Cir. 2009) (finding the question "Anything else for the record, [counsel]?" not sufficient opportunity to object); *United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007) (finding the question "Do you have anything further for the record, [counsel]?" not sufficient opportunity to object). This extension of the *Bostic* rule elevates form over function and requires the kind of "ritualistic incantation" we have rejected elsewhere in the sentencing context. *See United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir. 2007).

Here, I would find that the district court provided Polson with a meaningful opportunity to object to his sentence. After the court announced Polson's sentence, the following exchange occurred:

THE COURT: Anything more for the defendant?

COUNSEL: No, your Honor, thank you.

In my view, this was sufficient. Indeed, the timing of the question–at the conclusion of the sentencing proceeding–leaves little room for doubt that the court was soliciting objections for the record.

Because I believe that the district court provided a meaningful opportunity to object to his sentence, Polson's failure to do so should render his subsequent objection reviewable only for plain error. Nevertheless, finding myself constrained by circuit precedent, I concur in the majority opinion.